*Attachment A
*Exhibit 1

**WESTLAW**

2019 WL 3731894
Only the Westlaw citation is currently available.
UNREPORTED*

Potts v. State
Court of Special Appeals of Maryland.   August 8, 2019   Not Reported in Atl. Rptr.   2019 WL 3731894   (Approx. 5 pages)

Ivan **POTTS**
v.
**STATE** of Maryland

No. 731, Sept. Term, 2018
August 8, **2019**

Circuit Court for Baltimore City, Case No. 818052006

Berger, Leahy, Irma S. Raker (Senior Judge, Specially Assigned), JJ.

**Opinion**

Raker, J.

*1 Appellant Ivan **Potts** pled guilty on May 9, 2018 to possession of marijuana in the Circuit Court for Baltimore City. The court sentenced him to a term of incarceration of six months, all suspended, with two years' unsupervised probation. His guilty plea was conditioned on his ability to appeal the suppression court's ruling on his motion to suppress, and he thus presents the following question for our review:

"Did the trial court err in denying appellant's motion to suppress evidence?"

Holding that the suppression court erred, we shall reverse.

I.

Because we review a motion to suppress based on the evidence before the motions court, we set forth the following evidence elicited at the suppression hearing. At 10:40 p.m. on August 24, 2017, Officers Jason DiPaola and Ian Smith, in a marked police cruiser and in full uniform, drove past appellant's car on a street in Baltimore City. Appellant was sitting in the parked car in the driver's seat. Officer Smith noticed that appellant "ducked down" when the police cruiser passed him. He turned the police cruiser around and drove the wrong way up the one-way street to return to appellant's location. He parked near appellant's car, leaving the police cruiser facing the wrong way on the one-way street but not blocking appellant's car.

Both officers were in full uniform and wearing body cameras, which recorded the interaction with appellant. The officers exited their vehicle; Officer Smith approached the driver's side of appellant's vehicle, and Officer DiPaola crossed in front of appellant's car to stand at the passenger side. The officers shined flashlights in appellant's direction as they approached. Officer Smith's body camera then recorded the following conversation between him and appellant:

OFFICER SMITH: You can stay in there.

APPELLANT: Hmm?

OFFICER SMITH: You can stay in there. I'm just checking to make sure everything is—

APPELLANT: No, I'm good.

OFFICER SMITH: —good.

As the officers stood next to the vehicle, Officer DiPaola noticed "packaging material" inside appellant's vehicle and smelled "an odor of marijuana coming from the vehicle" when he

was "right on top of it, maybe less than a foot away." Appellant opened his car door after Office Smith told him he could remain in the vehicle, and Officer Smith immediately smelled marijuana. Officer Smith asked appellant if he had marijuana in the vehicle, and appellant acknowledged that he did. The officers searched appellant's car and discovered a large plastic bag that contained smaller plastic bags of marijuana.

Appellant filed a pretrial motion to suppress the evidence, alleging that the officers "stopped" him unconstitutionally and that the marijuana they seized should be suppressed. The court denied the motion, reasoning as follows:

> "All right. I will find that he was not stopped. And therefore, at the time that the door came open, I will find the officers credible. And he actually—add to that, right in front of him, the defendant also admitted that he had marijuana on him, and clearly, then, he had probably cause to search the vehicle. And under—what's the most recent case? ... *Robinson*, he could search the car. So they searched the car and recover the marijuana. Here we are. Motion is denied."

\*2 The judge found also that Officer Smith's statements to appellant were "about as pleasant of a conversation as I have heard between an officer and somebody on the street in a long time." Appellant pled guilty to possession of marijuana on the condition that he could appeal the denial of his motion to suppress, a procedure allowed by Maryland Rule 4-242(d)(2). The court imposed sentence, and this timely appeal followed.

## II.

Appellant argues that the search of his car violated the protection of the Fourth Amendment to the United States Constitution against unreasonable searches and seizures. He contends that a reasonable person in his position would not have felt free to leave, noting that Officers Smith and DiPaola parked their vehicle next to his, approached him in uniform while shining flashlights at him, and told him "not to get out of the car." Because a reasonable person would not feel free to leave, he argues, the officers "stopped" him without probable cause or reasonable articulable suspicion. Hence, the search was unconstitutional, and the evidence should have been suppressed.

The State argues that in this case, the Fourth Amendment was not applicable because appellant was not "stopped" by the police in the constitutional sense, and the initial encounter between Officer Smith and appellant was a "mere accosting," requiring no probable cause or articulable suspicion. The State maintains that the encounter between appellant and Officer Smith was not an investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968), and that the officer merely told appellant "he *could* stay in the car." Once appellant opened the car door, the officers immediately smelled marijuana, providing probable cause to search the vehicle constitutionally. Noting the deference given to the suppression court's findings of fact, the State emphasizes that the suppression court found that Officer Smith was "pleasant" when he told appellant that appellant need not exit his car. The State notes also the suppression court's finding that there was nothing preventing appellant from driving away when the officers approached him.

## III.

When we review the denial of a motion to suppress, ordinarily we review only the evidence that was before the suppression court. *Williams v. State*, 219 Md. App. 295, 314 (2014). As the State was the prevailing party, we consider the facts and inferences in the light most favorable to the State. *Id.* We accept the factual findings of the suppression court unless clearly erroneous; however, "we make our own independent constitutional appraisal as to whether an action was proper by reviewing the law and applying it to the facts of the case." *Id.* at 314–15.

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The Court of Appeals explained the way the Fourth Amendment governs police officers' interactions with civilians in *Swift v. State*, 393 Md. 139, 149 (2006):

> "It is well established that the Fourth Amendment guarantees are not implicated in every situation where the police have contact with an individual. Many courts have analyzed the applicability of the Fourth Amendment in terms of three tiers of interaction between a citizen and the police. The most intrusive encounter, an arrest, requires probable cause to believe that a person has committed or is committing a crime. The second category, the investigatory stop or detention, known commonly as a *Terry* stop, is less intrusive than a formal custodial arrest and must be supported by reasonable suspicion that a person has committed or is about to commit a crime and permits an officer to stop and

Case 1:20-cv-02981-GLR   Document 1-1   Filed 10/26/20   Page 3 of 4

briefly detain an individual. A police officer may engage in an investigatory detention without violating the Fourth Amendment as long as the officer has a reasonable, articulable suspicion of criminal activity ... A person is seized under this category when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority a reasonable person would have believed that he was not free to leave or is compelled to respond to questions ...

*3 The least intrusive police-citizen contact, a consensual encounter ... involves no restraint of liberty and elicits an individual's voluntary cooperation with non-coercive police contact. A consensual encounter need not be supported by any suspicion and because an individual is free to leave at any time during such an encounter, the Fourth Amendment is not implicated; thus, an individual is not considered to have been 'seized' within the meaning of the Fourth Amendment."

*Id.* at 149–51 (internal citations omitted).

In effect, we are asked here to determine whether Officers DiPaola and Smith "stopped" appellant before they smelled marijuana. A person is "stopped" or "seized" when the circumstances of an encounter with a police officer are such that "a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). In *Pyon v. State*, 222 Md. App. 412 (2015), we held that a police officer stopped the defendant unlawfully when she approached a vehicle in which he was a passenger. *Id.* at 459. Shortly after midnight, "on a lonely residential street apparently with no other persons abroad in the neighborhood," the officer parked her police cruiser at an angle to the rear of the defendant's vehicle, *id.* at 448, partially blocking his egress from a parking space. *Id.* at 450. The officer approached the vehicle on foot and asked for the driver's motor vehicle license. *Id.* We held that the officer "seized" the defendant, reasoning as follows:

> "[I]t is inconceivable that [the driver] would have felt free to respond, 'It is none of your business,' to have turned on the [vehicle]'s ignition switch, and to have started to drive away. Without such a feeling of freedom, however, he was 'seized' for Fourth Amendment purposes, and so was the appellant."

*Id.* at 453. We noted also that a traffic stop, though often routine, can be intimidating in and of itself because "few motorists would feel free ... to leave the scene of a traffic stop without being told they might do so." *Id.* (citing *Berkemer v. McCarty*, 465 U.S. 420, 436 (1984).

In contrast to a *Terry* stop, an interaction with law enforcement is a mere "accosting" or "consensual encounter" "where the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away." *Swift*, 393 Md. at 151. The distinction is one of "parity." *Pyon*, 222 Md. App. at 445. "Both parties to such mutual and voluntary exchanges stand as equals of each other. Neither is in a dominant role." *Graham v. State*, 146 Md. App. 327, 366 (2002). In *Graham*, a police officer noticed the defendant leaning against a vehicle near the road (the time of day was not part of the record). *Id.* at 352. The officer stopped his vehicle, got out, and asked the defendant his name. *Id.* We held that at that time, the officer had merely "accosted" the defendant, approaching him as one citizen might approach another. *Id.* at 353. But the interaction transformed into a "stop" a moment later, when the officer asked the defendant permission to search him and "did a pat-down for weapons." *Id.* at 353. At that time, the officer was no longer engaged with the defendant as an equal, and a reasonable person would not have felt free to walk away from the police officer.

In either case, the subjective intent of the officer is "irrelevant except insofar as that may have been conveyed to the [citizen]." *Mendenhall*, 446 U.S. at 554, n.6. Rather, we assess the totality of the circumstances objectively, as a reasonable person in the defendant's place would view them. *Pyon*, 222 Md. App. at 446–47. In that analysis, we often consider the circumstances addressed in *Swift*:

> *4 "[T]he time and place of the encounter, the number of officers present and whether they were uniformed, whether the police removed the person to a different location or isolated him or her from others, whether the person was informed that he or she was free to leave, whether the police indicated that the person was suspected of a crime, whether the police retained the person's documents, and whether the police exhibited threatening behavior or physical contact that would suggest to a reasonable person that he or she was not free to leave."

*Id.* at 153. The factors the Court of Appeals set out in *Swift* are not a checklist; and the test remains whether a reasonable person would feel free to leave in light of *all* of the circumstances. *Id.* at 152–53.

Appellant was parked legally on a one-way street at approximately eleven o'clock at night. Two uniformed police officers drove past him, then turned around and drove the wrong way up the street to park their cruiser near him. Though the police cruiser did not impede appellant's vehicle, the way the officers drove up to him was "aggressive and assertive behavior" by a police officer disregarding traffic rules, not the way one citizen approaches another. *Pyon*, 222 Md. App. at 448 (noting that the police officer could have "parked quietly and unobtrusively" near the defendant's vehicle). Two uniformed officers then exited their cruiser, and we note that two officers are more coercive than one. *Pyon*, 222 Md. App. at 450; *Trott v. State*, 138 Md. App. 89, 108, n.5 (2001). As they approached, the officers shined flashlights at appellant from multiple directions. In a manner similar to a traffic stop, Officer Smith walked directly toward appellant where he sat in the driver's seat. Meanwhile, Officer DiPaola crossed in front of appellant's vehicle and stood at the passenger-side door —the officers surrounded appellant as much as two people can surround a third. Notably, appellant was alone in the car, and thus the passenger seat was empty. Officer Smith then told appellant that he could stay in his car.

The suppression court considered in its ruling that Officer Smith used a "pleasant" tone of voice to say that appellant could "stay in [his vehicle]" because Officer Smith was "just checking to make sure everything is—good." We may consider in our analysis whether the police officer commands the defendant or tells him that he is free to leave. *Swift*, 393 Md. at 153. Though not dispositive, those factors may affect the way a reasonable person feels about an interaction with a police officer. In this case, Officer Smith used a "pleasant" tone of voice when he spoke to appellant. But he told appellant not that he was free to *leave* but that he *could stay* inside his vehicle. Under the circumstances, no reasonable person would have construed the officer's "could" to mean "may," as opposed to an instruction that he "should" stay in the vehicle.

Under these circumstances, a reasonable person would not have felt free "to have turned on the [vehicle]'s ignition switch, and to have started to drive away." *Pyon*, 222 Md. App. at 453. Officers DiPaola and Smith detained appellant without reasonable articulable suspicion and before they had probable cause. The evidence they seized should have been suppressed.

### JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE CITY.

### All Citations

Not Reported in Atl. Rptr., 2019 WL 3731894

### Footnotes

* This is an unreported opinion, and it may not be cited in any paper, brief, motion, or other document filed in this Court or any other Maryland Court as either precedent within the rule of stare decisis or as persuasive authority. Md. Rule 1-104.

---

**End of Document**   © 2020 Thomson Reuters. No claim to original U.S. Government Works.