## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

IVAN R. POTTS, JR.,

    Plaintiff,

    v.                                                   Civil Action No.:  RDB-21-1073

OFFICER JASON DiPAOLA,
OFFICER IAN SMITH,
BALTIMORE CITY POLICE DEPT.,

    Defendants.

## MEMORANDUM OPINION

Defendants Baltimore City Police Department, Officer Jason DiPaola, and Officer Ian Smith filed a Motion to Dismiss the above-entitled civil rights complaint.  ECF 15.  Self-represented Plaintiff Ivan R. Potts, Jr., has opposed the motion (ECF 30) and has also filed a Motion to Amend the Complaint as well as an Amended Complaint.  ECF 28; ECF 29.[1]  No hearing is necessary to resolve the matters pending.  *See* Local Rule 105.6 (D. Md. 2021).  For the reasons stated herein Defendants' Motion to Dismiss shall be granted and Plaintiff's Motion to Amend shall be denied.

## BACKGROUND

A.    Complaint Allegations

Plaintiff alleges that on August 24, 2017, Baltimore City Police Officers Jason DiPaola and Ian Smith, who were in full uniform and driving in a marked police car, drove past Plaintiff's car which was parked on a street in Baltimore.  ECF 1 at 5.  After passing Plaintiff's car, Officer Smith turned the car around, drove the wrong way up a one-way street, and returned to Plaintiff's car.

---

[1]  There is an additional Motion for Leave to Amend Complaint docketed at ECF 32 that appears to be a duplicate of the earlier filed motion and contains only one page of the motion.

*Id*.  Smith parked the car, which remained facing in the wrong direction, near Plaintiff's car.  Both officers got out of the police cruiser and approached Plaintiff's car.  *Id*.  According to Plaintiff he was then "unlawfully detained, arrested, and seized before they had probable cause.  *Id*.

On May 9, 2018, Plaintiff claims he was wrongfully convicted of possession of marijuana in the Circuit Court for Baltimore City, based on an arrest made by DiPaola and Smith.  ECF 1 at 5; ECF 1-1 at 1 (Aug. 8, 2019 Opinion of Md. Ct. of Spec. App.).  Plaintiff entered a guilty plea conditioned on his ability to appeal the suppression court's denial of his motion to suppress.  ECF 1-1 at 1.  In its opinion overturning the suppression court's decision, the Court of Special Appeals observed:

> [Potts] was parked legally on a one-way street at approximately eleven o'clock at night.  Two uniformed police officers drove past him, then turned around and drove the wrong way up the street to park their cruiser near him.  Though the police cruiser did not impede appellant's vehicle, the way the officers drove up to him was "aggressive and assertive behavior" by a police officer disregarding traffic rules, not the way one citizen approaches another.  *Pyon* [*v. State*], 222 Md. App. [412] at 448 [(2015)] (noting that the police officer could have "parked quietly and unobtrusively" near the defendant's vehicle).  Two uniformed officers then exited their cruiser, and we note that two officers are more coercive than one.  *Pyon*, 222 Md. App. at 450; *Trott v. State*, 138 Md. App. 89, 108, n.5 (2001).  As they approached, the officers shined flashlights at appellant from multiple directions.  In a manner similar to a traffic stop, Officer Smith walked directly toward appellant where he sat in the driver's seat.  Meanwhile, Officer DiPaola crossed in front of appellant's vehicle and stood at the passenger-side door – the officers surrounded appellant as much as two people can surround a third.  Notably, appellant was alone in the car, and thus the passenger seat was empty.  Officer Smith then told appellant that he could stay in his car.
>
> The suppression court considered in its ruling that Officer Smith used a "pleasant" tone of voice to say that appellant could "stay in [his vehicle]" because Officer Smith was "just checking to make sure everything is – good."  We may consider in our analysis whether the police officer commands the defendant or tells him that he is free to leave.  *Swift* [*v. State*], 393 Md. [193] at 153 [(2006)].  Though not dispositive, those factors may affect the way a reasonable person feels about an interaction with a police officer.  In this case, Officer Smith used a "pleasant" tone of voice when he spoke to appellant.  But he told appellant not that he was free *to leave* but that he *could stay* inside his vehicle.  Under the circumstances, no reasonable person would have construed

> the officer's "could" to mean "may," as opposed to an instruction that he "should" stay in the vehicle.
>
> Under these circumstances, a reasonable person would not have felt free "to have turned on the [vehicle's] ignition switch, and to have started to drive away." *Pyon*, 222 Md. App. at 453. Officers DiPaola and Smith detained appellant without reasonable articulable suspicion and before they had probable cause. The evidence they seized should have been suppressed.

ECF 1-1 at 4. Following the Court of Special Appeals' reversal of the suppression court's ruling, the charges against Plaintiff were dismissed via *nolle prosequi*. ECF 15-3 at 2.

As relief for violation of his Fourth, Eighth, and Fourteenth Amendment rights, Plaintiff seeks monetary damages for mental anguish; emotional distress; anxiety and depression; false imprisonment; and race discrimination. ECF 1 at 3 and 5. He adds that he would like to receive therapy. *Id.*

B.    Defendants' Response

In their Motion to Dismiss, Defendants assert that Plaintiff's State and common law claims against the Baltimore City Police Department are barred by sovereign immunity; Plaintiff failed to comply with the Local Government Tort Claims Act ("LGTCA"); all of the claims except malicious prosecution are time barred; Officers DiPaola and Smith are entitled to qualified immunity; and the complaint fails to state a claim upon which relief may be granted. ECF 15. In his response Plaintiff asserts that Defendants' motion is made moot by his amended complaint and that the allegations in his complaint are sufficient to survive scrutiny under Fed. R. Civ. P. 8 and 12(b)(6). ECF 30.

C.    Motion to Amend Complaint

Plaintiff's proposed amended complaint seeks to add Baltimore City Police Commissioner Kevin Davis as a Defendant. ECF 29. Plaintiff alleges that Davis was the Commissioner at all times relevant to the complaint; that he failed to supervise and take corrective action or to

"implement meaningful procedures to discourage lawless official conduct." *Id*. at 1-2. Plaintiff adds that the conduct of Officers DiPaola and Smith and to which he was subjected, "was known to and ratified by the Defendant former Commissioner Davis and Defendant [Baltimore City Police Department]." *Id*. at 6. Plaintiff further alleges that neither Commissioner Davis or the police department have "taken any effective action to prevent" police officers from engaging in the type of misconduct attributed to DiPaola and Smith. *Id*. Plaintiff also addresses Defendants' Motion to Dismiss in the amended complaint.[2] *Id*. at 11-14; ECF 29-1 (Plaintiff's Declaration).

Pursuant to Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once as a matter of course within 21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Defendants' Motion to Dismiss was filed on October 1, 2021; Plaintiff's amended complaint was filed on February 15, 2022. ECF 15; ECF 29.

Rule 15 dictates that "[t]he court should freely give leave when justice so requires." *Id*. Where the proposed amendment to the complaint appears to be a futility, this Court has the discretion to deny leave to amend. Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards: "[A] district court may deny leave if amending the complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules." *Katyle v. Penn Nat. Gaming, Inc*. 637 F.3d 462, 471 (4th Cir. 2011) (citing *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 376 (4th Cir. 2008)).

---

[2] Plaintiff's declaration will be considered in the context of Plaintiff's opposition to Defendants' motion.

Although leave to amend must be freely given by this Court, leave to amend may be denied where the proposed amendment "would be prejudicial to the opposing party, or the moving party has acted in bad faith, or the amendment would be futile." *See Equal Rights Ctr. v. Niles Bolton Assoc.*, 602 F.3d 597, 603 (4th Cir. 2010). A proposed amendment is prejudicial to the opposing party if it is belated and would change the nature of the litigation. *Id*. at 604; *see also Deasy v. Hill*, 833 F.2d 38, 42 (4th Cir. 1987). The Court may not address new claims raised in opposition to a dispositive motion, because it is not a vehicle for amending the complaint. *See Whitten v. Apria Healthcare Grp., Inc.*, No. PWG-14-3193, 2015 WL 2227928, at *7 (D. Md. May 11, 2015) *see also Mylan Laboratories, Inc. v. Akzo, N. V.*, 770 F.Supp. 1053, 1068 (D. Md. 1991) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)), *aff'd*, 2 F.3d 56 (4th Cir. 1993); *Zachair Ltd. v. Driggs*, 965 F.Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998); *Woodbury v. Victory Van Lines*, 286 F.Supp.3d 685, 692 (D. Md. 2017) (stating it is axiomatic that a plaintiff may not use their memorandum in opposition to amend the complaint).

The sole allegation against Davis is that he allegedly failed to intervene or properly train DiPaola and Smith. Although Plaintiff mentions that there is a policy in place within the police department that resulted in the alleged injuries, he does not specifically identify that policy.

Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory

indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

The allegations against former Commissioner Davis do not include any factual allegation that he knew DiPaola and Smith were engaged in conduct that posed a pervasive and unreasonable risk for constitutional injury.  To the contrary, the actions of DiPaola and Smith were upheld by the suppression court and were deemed unconstitutional only after the matter was appealed. Further, there is nothing stated in either the complaint or the amended complaint that indicates DiPaola and Smith detained Plaintiff pursuant to a policy put into place by Davis or the Baltimore City Police Department.  Because the proposed amendment to include Davis as a Defendant is a futility, the Motion to Amend the Complaint shall be denied.  However, in light of Plaintiff's self-represented status, the declaration in support of the amended complaint will be considered in the context of the pending Motion to Dismiss.

## STANDARD OF REVIEW

In reviewing the complaint in light of a Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) the Court accepts all well-pleaded allegations of the complaint as true and construes the

facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997).   Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."   *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).   Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555.   Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563.   To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.   "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Factors to consider in determining if a complaint fails to comply with Rule 8(a) include the length and complexity of the complaint, *see, e.g.*, *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003); whether the complaint was clear enough to enable the defendant to know how to defend himself, *see, e.g.*, *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir. 2000); and whether the plaintiff was represented by counsel. *See, e.g.*, *Elliott v. Bronson*, 872 F.2d 20, 21-22 (2d Cir. 1989). Plaintiff must provide enough detail to illuminate the nature of the claim and to allow Defendants to respond. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Although district courts have a duty to construe self-represented pleadings liberally, Plaintiff must nevertheless allege facts that state a cause of action. *See Beaudett v. Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (duty to construe liberally does not require courts to conjure up questions never squarely presented).

## ANALYSIS

### A.    Baltimore City Police Department

"By Ch. 367 of the Acts of 1867, the General Assembly of Maryland made the Police Department of Baltimore City a state agency; its officials and officers were designated as state officers." *Clea v. Mayor & City Council of Baltimore*, 312 Md. 662, 668, 541 A.2d 1303, 1306 (1988). Further, "[a]s a matter of Maryland law, Baltimore City [is] simply not [a police officer's] employer for tort liability purposes." *Id*. at 669-70; 541 A.2d at 1306. As a State agency, the Baltimore City Police Department has common law State sovereign immunity. *Baltimore Police Dept. v. Cherkes*, 140 Md. App. 282, 323, 780 A.2d 410, 434 (2001). More than 20 years ago, the Maryland State legislature amended the LGTCA by adding the Baltimore City Police Department to the list of local governments covered by the LGTCA. *Id*. The purpose of the amendment to the LGTCA was "to extend its protection to Baltimore police officers, who were otherwise not

8

shielded by the Maryland Tort Claims Act." *Estate of Anderson v. Strohman*, 6 F. Supp. 3d 639, 642–43 (D. Md. 2014) (citing *Cherkes*, 140 Md. App. at 323, 780 A.2d at 433-34).  Since the LGTCA applies to the department, the notice requirements for any State law claim raised against it (or its employees) must have been observed by Plaintiff.  *See* Md. Code Ann., Cts & Jud. Proc. § 5-304.

Plaintiff suggests that he substantially complied with the notice provisions of the LGTCA because his underlying criminal conviction was overturned on appeal based on a violation of the Fourth Amendment's prohibition against search and seizure without probable cause.  ECF 29 at 13.  However, an appellate decision issued in the context of a criminal case is not the equivalent of notice that Plaintiff intended to seek civil damages for the conduct of Officers DiPaola and Smith.  The first "notice" provided to Defendants here was the filing of this lawsuit.  The LGTCA requires notice of the claimant's injury within one-year after the injury, Md. Code Ann., Cts & Jud. Proc. § 5-304(e), that is provided to the Baltimore City Solicitor's office, *id.* at § 5-304(c)(3)(i).  The failure to provide the notice required is not a basis for dismissal of the complaint when the defendant fails to demonstrate prejudice by the lack of notice, and if Plaintiff demonstrates good cause for failing to comply with the notice requirement it may be waived.  *Id.* at § 5-304(d).  Defendants assert that Plaintiff's failure to affirmatively plead compliance with the LGTCA notice requirements is fatal to the complaint, but do not state how that failure has prejudiced their ability to defend this suit.  At the same time, Plaintiff has offered no basis for a finding of good cause.

This Court has held that the Baltimore City Police Department is not entitled to Eleventh Amendment immunity because the department is too interconnected with the government of the city.  *Chin v. City of Baltimore*, 241 F.Supp. 2d 546, 548 (D. Md. 2003) (citing *Blades v. Woods*,

107 Md. App. 178, 181, 667 A.2d 917, 918-19 (1995)).   Thus, the Baltimore City Police Department is a "person" for purposes of § 1983 liability.  *Id*.  However, the *Chin* court found that "with respect to the state law causes of action, the result is different" because the department "enjoys sovereign immunity from action for damages based on state common law torts or state constitutional torts."  *Id*. (citing *Cherkes*, 140 Md. App. 282, 305, 780 A.2d 410, 424).   To the extent that Plaintiff's complaint raises State common law or constitutional claims with regard to the Baltimore City Police Department, those claims are barred by sovereign immunity.

With regard the federal constitutional claims against the Baltimore City Police Department, the complaint fails to sufficiently allege the existence of a custom or policy that resulted in Plaintiff's unlawful stop by DiPaola and Smith.  The only incident alleged in the complaint is the stop itself; a policy or custom may not be inferred from one event.  *See Chin*, 241 F.Supp.2d at 549 (citing *Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194, 202 (7th Cir. 1985)) (holding that dismissal of a complaint was appropriate where the only evidence of a municipality's custom was the single constitutional violation alleged in the complaint).   "Outside of such formal decisionmaking channels, a municipal custom may arise if a practice is so 'persistent and widespread' and 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'"  *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).  Without sufficient allegation that the unlawful stop resulted from a custom or policy, the Baltimore City Police Department may not be held liable on a theory of *respondeat superior* for constitutional violations by its employees.  *See Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727-28 (4th Cir. 1999).   "[N]ot every deprivation of a constitutional right will lead to municipal liability."  *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).  The claim against the Baltimore City Police Department must accordingly be dismissed.

B.      Statute of Limitations

"Section 1983 provides a federal cause of action, but in several respects relevant here, federal law looks to the law of the State in which the cause of action arose.  This is so for the length of the statute of limitations: it is that which the State provides for personal-injury torts."  *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)).   In Maryland, the applicable statute of limitations is three years from the date of the occurrence.  *See* Md. Code Ann., Cts & Jud. Proc. § 5-101.  The question of when a cause of action has accrued under §1983 is a federal question.  *See Nassim v. Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc).  The date of accrual occurs "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action."  *Id*.

The three-year statute of limitations may be tolled for equitable reasons, but only in "those rare instances where, due to circumstances external to the party's own conduct, it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (citing *Harris v. Hutcherson*, 209 F.3d 325, 330 (4th Cir. 2000)).  Equitable tolling is unavailable to a plaintiff who has not been diligent in protecting his or her rights; rather, the plaintiff must establish that he or she has been prevented from asserting those rights.  *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 555 (1974).  Under Maryland law, the statute of limitations is strictly construed.  "Absent legislative creation of an exception to the statute of limitations, we will not allow any 'implied and equitable exception to be engrafted upon it.'"  *Hecht v. Resolution Trust Corp.*, 333 Md. 324, 333 (1994) (quoting *Booth Glass Co. v. Huntingfield Corp.*, 304 Md. 615, 653 (1985)).

11

The date of accrual for Plaintiff's Federal and State constitutional claims[3] as well as his claims of false arrest, intentional infliction of emotional distress, and race discrimination is the date of his arrest: August 24, 2017.  The complaint was received for filing on May 3, 2021, more than three years after the date these causes of action accrued.  Plaintiff does not present evidence sufficient for a finding of an equitable tolling of the statute of limitations, therefore, the claims must be dismissed as time barred.

The date of accrual for Plaintiff's malicious prosecution claim differs.  "The common law tort of malicious prosecution is well-established: a prima facie case of malicious prosecution must include (1) the initiation or maintenance of a proceeding against the plaintiff by the defendant; (2) termination of that proceeding favorable to the plaintiff; (3) lack of probable cause to support that proceeding; and (4) the defendant's malice."  *Lambert v. Williams*, 223 F.3d 257, 260 (4th Cir. 2000) (citing W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts 874 (5th Ed.1984));2 *see also Heron v. Strader*, 361 Md. 258, 264, 761 A.2d 56, 59 (2000). Importantly, a cause of action for malicious prosecution requires "termination of the prior criminal proceeding in favor of the accused."  *See Heck v. Humphrey*, 512 U. S. 477, 484 (1994).  Thus, "a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor."  *Id*. at 489.  The date Plaintiff's criminal proceedings terminated in his favor is August 8, 2019, the date the Maryland Court of Special Appeals reversed the holding of the suppression court.  To the extent Plaintiff raises a malicious prosecution claim, it is timely.

The malicious prosecution claim fails however for a different reason.  Here there are no facts alleged from which "malice, or with a motive other than to bring the offender to justice" might be logically attributed to Defendant DiPaola and Smith.  *Heron*, 361 Md. at 264, 761 A.2d

---

[3]  Plaintiff states that his rights under the Fourth, Eighth and Fourteenth Amendments were violated.  ECF 1 at 3.

at 59, *see also Mouzon v. Mewshaw*, 2017 WL 3034802 *7 (D. Md. 2017) (finding question of fact existed for jury to determine if malice existed where police officer failed to clarify that no gun was found on the plaintiff at the time of arrest).   While it is true that DiPaola and Smith were later determined to have violated the Fourth Amendment because they lacked an articulable suspicion to detain Plaintiff, they also smelled marijuana and arrested him following a search of his car.   It cannot be inferred from the finding by the Maryland Court of Special Appeals overturning the suppression court's decision that DiPaola and Smith pursued criminal charges against Plaintiff for a purpose other than to bring an offender to justice.   Accordingly, the malicious prosecution claim must also be dismissed.

C.      Qualified Immunity

Plaintiff's federal constitutional claims against DiPaola and Smith are also barred by qualified immunity.   Although the actions taken by Officers DiPaola and Smith in detaining Plaintiff in his car were later found to be unsupported by a reasonably articulable suspicion, that finding does not by itself mean that Plaintiff is entitled to civil damages.   "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *accord Yates v. Terry*, 817 F.3d 877, 884 (4th Cir. 2016).

To determine whether an officer is entitled to qualified immunity, courts engage in a two-part inquiry set forth by the Supreme Court.   *Yates*, 817 F.3d at 884 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).   The first part is to determine whether the facts, construed in the light most favorable to the non-moving party, establish that a violation of a constitutional right occurred.   *Id*. (citing *Saucier*, 533 U.S. at 201).   The second part is to determine whether that right was clearly

established.  *Id.* (citing *Saucier*, 533 U.S. at 201).  Courts may use discretion in deciding the sequence in which to conduct the two-part analysis.  *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

In determining whether the right claimed to be violated is clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  "[A]lthough the exact conduct at issue need not have been held to be unlawful in order for the law governing an officer's actions to be clearly established, the existing authority must be such that the unlawfulness of the conduct is manifest."  *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998); *accord Sims v. Labowitz*, 885 F.3d 254, 262-63 (4th Cir. 2018).  "If there exists a 'legitimate question' as to whether particular conduct violates a particular right then the right is not clearly established and qualified immunity applies."  *Korb v. Lehman*, 919 F.2d 243, 247 (4th Cir. 1990) (citing *Tarantino v. Baker*, 825 F.2d 772, 775 (4th Cir. 1987)); *accord Martin v. St. Mary's Dep't Soc. Servs.*, 346 F.3d 502, 505 (4th Cir. 2003).  "When such a 'legitimate question' exists, the principle of qualified immunity gives police officers the necessary latitude to pursue their investigations without having to anticipate, on the pain of civil liability, future refinements or clarifications of constitutional law."  *Tarantino*, 825 F.2d 772, 775 (4th Cir. 1987), *abrogated on other grounds by Horton v. California*, 496 U.S. 128 (1990).

> The "meaning" of the fourth amendment, at least when stated in broad philosophical terms, is relatively clear.  The precise action or combination of actions, however, which will infringe a particular suspect's fourth amendment rights is often difficult for even the constitutional scholar to discern because the legal doctrine has developed and continues to develop incrementally.

*Tarantino*, 825 F.2d at 775 (even when court concludes police officer violated constitutional right, officer remains shielded from civil liability unless right was clearly established).

Here, the Maryland Court of Special Appeals found that under the circumstances, a reasonable person would not have felt free to leave the scene and therefore, he had been stopped, triggering the requirement that DiPaola and Smith have a reasonable, articulable suspicion for the stop. *Potts*, 2019 WL 3731894, *4. The judge presiding over the suppression hearing reached a different conclusion. Further, the appellate court's decision focused on Smith's use of the word "could" when telling Plaintiff to stay in his car, rather than stating that Plaintiff "may" stay in his car or that he could leave. It stands to reason that where two different judicial bodies come to opposing conclusions regarding a Fourth Amendment claim, there is a legitimate question about the contours of the right under the circumstances presented. For this reason, Defendants DiPaola and Smith are entitled to qualified immunity in connection with Plaintiff's Fourth Amendment claim.

## CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss shall be GRANTED and Plaintiff's Motion to Amend shall be DENIED. A separate Order, implementing the conclusions noted, follows.


__3/2/2022___ _____                              _____/s/_____
Date                                               RICHARD D. BENNETT
                                                   UNITED STATES DISTRICT JUDGE

15